UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:14-cv-268-FDW

| RICHARD T. MAYS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
|  | ) | **ORDER** |
|  | ) |  |
| KEITH WHITENER, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint, (Doc. No. 2), filed pursuant to 42 U.S.C. § 1983. See 28 U.S.C. § 1915A. Also pending before the Court are the following motions by Plaintiff: Motion to Compel Disclosure, (Doc. No. 3), Motion for Leave to File Summons, (Doc. No. 5), and Motion for Extension of Time of Deadlines, (Doc. No. 6).

**I.     BACKGROUND**

Pro se Plaintiff Richard T. Mays is a North Carolina state court prisoner currently incarcerated at Marion Correctional Institution. North Carolina Department of Public Safety ("NCDPS") records show that on February 29, 2008, in Mecklenburg County Superior Court, Plaintiff was convicted of statutory rape/sex offense. Plaintiff was sentenced to a total term of more than 49 years of imprisonment. Plaintiff filed this action on October 10, 2014, pursuant to 42 U.S.C. § 1983. Plaintiff filed a motion to amend the complaint, with the proposed Amended Complaint attached, on November 4, 2014. This Court has granted the motion to amend the Complaint.

1

In the Amended Complaint, Plaintiff has named as Defendants (1) Keith Whitener, identified as Superintendent at Marion; (2) Randy Teague, identified as Assistant Superintendent at Marion; (3) Danny Freeman, identified as "F" Unit Manager at Marion; (4) Keith Turner, identified as "D" Unit Manager at Marion; (5) Toni Banks, identified as "F" Unit Assistant Manager at Marion; (6) W. Walker, identified as an officer at Marion; (7) FNU Sparks, identified as an officer at Marion; (8) Matthew Pennell, identified as a disciplinary hearing officer for the NCDPS; and (9) Edward Thomas, identified as chief disciplinary hearing officer for the NCDPS.

In this action, Plaintiff alleges, in part, that Defendants violated his First Amendment right to access to the courts by refusing to allow him to keep all of his legal papers at Marion. Specifically, Plaintiff alleges that on February 26, 2014, he was transferred from Scotland Correctional Institution to Marion. (Doc. No. 2 at 3). He states that he traveled with two shipping bags of legal texts, one bag of legal work, and one bag of personal items. (Id.). During intake processing at Marion, Plaintiff was told he would be allowed ten books total, including legal texts, at Marion. (Id.). Plaintiff alleges that he was told that the number of legal texts allowed was limited by Marion's standard operating procedures and that some of his legal texts would be held at intake until the standard operating procedures could be forwarded to Plaintiff. Plaintiff alleges that on February 28, 2014, Defendant Banks told him that he would be allowed to "check in/check out" legal texts from Plaintiff's cell to intake through staff. (Id.). On March 1, 2014, Plaintiff filed a grievance, to which Defendant Freeman responded, stating that Marion only allows ten books "to avoid security and sanitation problems related to storage of legal texts." (Id. at 4). Plaintiff alleges that Defendant Teague approved the response to the grievance, which was upheld on appeal through Step Three. (Id.).

Plaintiff alleges that he filed a new grievance on April 6, 2014, "due to difficulty in

2

checking out Plaintiff's own legal texts from intake." (Id.). Plaintiff alleges that he requested access to his legal texts seven days in a row and had to explain to staff each time the new check in/check out system. (Id.). Plaintiff alleges that Defendant Banks responded to the grievance, noting that Plaintiff had been given access to his legal texts "as security and duties allowed." (Id.). Plaintiff appealed the grievance through Step Three.

Plaintiff alleges that on June 1, 2014, he wrote to Defendant Whitener but received no response. Plaintiff alleges that he was moved from "F" to "H" Unit on July 24, 2014. Plaintiff alleges that he was moved from "H" to "D" Unit on August 9, 2014. (Id.). Plaintiff alleges that on August 7, 2014, he "sued for relief" in North Carolina Superior Court, in case number 14cvs575, and he states that he "claimed violations of state and federal rights, violations of state statute, and agency policy." (Id. at 4-5). Plaintiff alleges that, by order dated September 22, 2014, the Honorable J.T. Davis "dismissed Plaintiff's suit as frivolous and did not entertain motions to proceed, amend, or appeal." (Id. at 5).

Plaintiff alleges that on September 9, 2014, he was sent to Segregation on "E" Unit for a contraband charge for having a "spork" in his cell. (Id.; see also Doc. No. 1 at 5). Plaintiff alleges that when his books were packed up and moved to "E" Unit, Defendants Walker and Sparks told him he had "too many books." (Doc. No. 2 at 6). Plaintiff tried to explain the check in/check out system "to no avail." (Id.). Defendant Sparks told Plaintiff that he could donate or ship the books or that Sparks could throw them away. (Id.). Defendant Walker told Plaintiff to decide what to do with the books or he would be charged with having contraband. Plaintiff alleges that he was then given a contraband charge for his legal texts, Milton's Paradise Lost, Ovid's Metamorphosis, and a set of fingernail clippers. (Id.). Plaintiff alleges that Defendant Turner brought the contraband charge and asked Plaintiff how he wished to plea, to which

3

Plaintiff responded that he pled not guilty. (Id.). Plaintiff alleges that he filed a grievance based on confiscation of his legal texts, he received a response on October 23, 2014, and is awaiting appeal. (Id.). Plaintiff alleges that he was released from segregation on September 25, 2014, and moved to "F" Unit.

Plaintiff alleges that on October 1, 2014, he was taken to video conference with detention hearing officer Defendant Pennell on the contraband charge. (Id. at 7). Plaintiff was told that most of the evidence Plaintiff asked to be collected had not been gathered but that Pennell was going to proceed anyway. (Id.). Plaintiff alleges that he "had on hand the missing grievances but was not allowed to present them." (Id.). Plaintiff also alleges that he "asked to read the relevant [NCDPS] policies concerning legal texts into the record and was denied." (Id.). Defendant Pennell found Plaintiff guilty and he cited a lack of evidence to support Plaintiff's position. Plaintiff appealed to chief disciplinary hearing officer Defendant Thomas, who denied Plaintiff's appeal, finding that proper procedures were followed and that sufficient evidence was present to find Plaintiff guilty. (Id.). Plaintiff alleges that he appealed to Director of Prisons George Solomon, on October 10, 2014, but received no response.

Plaintiff alleges that on October 17, 2014, he was taken in leg irons, cuffs, and a waist chain to a meeting with "D" Unit manager Defendant Turner and Lieutenant Poteat. (Id.). In the room were two shipping bags containing all of Plaintiff's legal texts and other books, except for two legal texts that were in Plaintiff's cell. (Id.). Plaintiff was told to choose ten books and the rest were to be sent home or trashed. (Id. at 8). Plaintiff chose eight legal texts, the NCDPS policy manual, and a personal journal. (Id.). Plaintiff informed Defendant Turner that the issue of Plaintiff's legal texts were a matter of an ongoing lawsuit and should be held in storage in lieu of a court ruling. Defendant Turner responded, "I don't care what statute or law you want to

4

quote me, either keep ten books and ship the rest of I'll throw them away." (Id.). Plaintiff alleges that ten books were sent with Petitioner back to segregation where he was allowed two in his cell, and that his canteen account was charged the cost of shipping his legal texts and books home. (Id.).

Plaintiff contends that "the actions of Defendants Whitener, Teague, Freeman, Turner, Banks, Walker, and Sparks denied Plaintiff his rights to access the courts, defend himself in ongoing criminal matters, as well as contest unfair administrative actions." (Id.). Plaintiff further alleges that "the actions of Defendants Whitener, Teague, Freeman, Turner, and Banks denied Plaintiff's due process rights by not following state-wide agency policies concerning legal texts." (Id.). Plaintiff alleges that Defendant Pennell violated Plaintiff's due process rights by conducting a disciplinary hearing without certain evidence requested by Plaintiff and then by refusing to allow Plaintiff to introduce certain evidence. (Id. at 9). Plaintiff alleges that Defendant Thomas violated Plaintiff's due process rights by upholding the contraband charge against Plaintiff when the evidence requested was not presented and where available evidence was not allowed to be submitted. (Id.). Plaintiff also purports to bring an Eighth Amendment claim of cruel and unusual punishment against Defendants Turner, Pennell, and Thomas based on Plaintiff's allegations that he was "unjustly confined to segregation." (Id.). As relief, Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages against Defendants.

## II. STANDARD OF REVIEW

Here, Plaintiff has paid the filing fee. Thus, he is not proceeding in forma pauperis. Nevertheless, regardless of whether Plaintiff paid the filing fee, 28 U.S.C. § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a

5

governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### III. DISCUSSION

Plaintiff first contends that various Defendants violated his right to access to the courts by prohibiting him from keeping all of his legal files with him at Marion. In Bounds v. Smith, the Supreme Court held that the right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis v. Casey, 518 U.S. 343, 356-57 (1996). Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id. A plaintiff's "[f]ailure to show that a

'nonfrivolous legal claim has been frustrated' is fatal to his Bounds claim." Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Casey, 518 U.S. at 353).

Plaintiff fails to state a claim for a violation of his First Amendment right to access to the courts because he has not alleged any actual injury. While he alleges that some of his legal texts were confiscated, thus "delaying actions in his state criminal case," Plaintiff does not allege that he missed any deadline set by the Court or that he was prejudiced in any way by the inability to access his legal materials. See (Doc. No. 2 at 11). As noted, Plaintiff was convicted in 2008 of statutory rape/sex offense. The Court finds no records showing that Plaintiff appealed his conviction, or that there are any ongoing criminal or other pending matters related to his criminal conviction, as he contends. Plaintiff has simply not shown that he has suffered any actual injury by Defendants' alleged refusal to allow him to keep all of his legal materials at the prison. That is, he does not allege facts showing that "a nonfrivolous legal claim has been frustrated or was being impeded." Lewis v. Casey, 518 U.S. at 353. In sum, Plaintiff has failed to state a claim for a violation of his First Amendment right to access to the courts.[1]

Next, Plaintiff purports to bring a due process claim against Defendants Turner, Pennell, and Thomas, who participated in the disciplinary actions that led to a finding of guilt on his contraband charge. As noted, Plaintiff alleges that Defendant Pennell violated Plaintiff's due process rights by conducting a disciplinary hearing without evidence requested by Plaintiff and then by refusing to allow Plaintiff to introduce certain evidence. Plaintiff alleges that Defendant Thomas violated Plaintiff's due process rights by upholding a charge against Plaintiff when the

---

[1] Furthermore, although this Court does not have before it the state court lawsuit that Plaintiff alleges that he filed, in which he states that he brought federal claims, Plaintiff's claims here are barred by the principles of res judicata if he brought the same claims in the state court action, which by Plaintiff's own allegations was dismissed as frivolous.

evidence requested was not presented and where available evidence was not allowed to be submitted. (Id.). As to Defendant Turner, Plaintiff alleges only that Defendant Turner brought the contraband charge and asked Plaintiff how he wished to plea, to which Plaintiff responded that he pled not guilty. (Id.).

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey v. Brewer, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits or solitary confinement, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. See Wolff, 418 U.S. at 564-71. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. See Baxter v. Palmigiano, 425 U.S. 308, 322 (1976); Brown v. Braxton, 373 F.3d 501, 505-06 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. See Baxter, 425 U.S. at 323 n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Correctional Institute v. Hill, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. See Kelly v. Cooper, 502 F. Supp.

1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. See Hill, 472 U.S. at 456; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

Here, even assuming that Plaintiff was not entitled to present certain evidence at his disciplinary hearing, Plaintiff has failed to allege a deprivation of a constitutionally protected liberty interest. Plaintiff does not allege that he lost good time credits as a result of the disciplinary proceedings. Furthermore, although Plaintiff alleges that he was placed in segregation for fifteen days in connection with his disciplinary hearing, he has not alleged that the conditions of such confinement presented "the type of atypical, significant deprivation" that creates a liberty interest. See Sandin v. Conner, 515 U.S. 472, 485-86 (1995) (thirty days in segregated disciplinary confinement did not trigger due process protection where the conditions of disciplinary segregation were not significantly different from the conditions outside disciplinary segregation); Beverati v. Smith, 120 F.3d 500, 502-04 (4th Cir. 1997) (finding that inmates in administrative segregation who only left their cells three to four times per week and were not allowed any outdoor recreation did not suffer from an atypical and significant hardship); see also Acre v. Walker, 139 F.3d 329, 332, 336 (2d Cir. 1998) (finding that an eighteen-day confinement in administrative segregation, without exercise privileges, did not violate the Due Process Clause). In sum, Plaintiff fails to state a due process claim against Defendants Turner, Pennell, and Thomas.

Finally, Plaintiff also purports to bring an Eighth Amendment claim of cruel and unusual punishment against Defendants Turner, Pennell, and Thomas based on Plaintiff's allegations that he was "unjustly confined to segregation." Plaintiff fails to state an Eighth Amendment claim

because merely being placed in disciplinary segregation for fifteen days is not cruel and unusual punishment within the meaning of the Eighth Amendment. See In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999).

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Amended Complaint is **DISMISSED** for failure to state a claim.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Amended Complaint, (Doc. No. 1), is **DISMISSED** for failure to state a claim.

2. Plaintiff's Motion to Compel Disclosure, (Doc. No. 3), Motion for Leave to File Summons, (Doc. No. 5), and Motion for Extension of Time of Deadlines, (Doc. No. 6), are **DENIED** as moot.

3. The Clerk is instructed to terminate this action.

Signed: April 28, 2015

Frank D. Whitney
Chief United States District Judge